JUSTICE TRIEWEILER
dissenting.
¶31 I dissent from the majority’s Opinion. I would reverse the judgment of the Workers’ Compensation Court.
¶32 The Workers’ Compensation Court and the majority have correctly identified the narrow issue in this case. It is simply whether at the time of his injury the claimant, Joseph Geiger, was being “used” as a driver by David Deckert, d/b/a David Deckert Trucking. Accepting the majority’s definition of used as “to put into service or apply it for a purpose;....” it is clear that Geiger was serving a purpose for Deckert at the time of his injury. In fact, the nature of Geiger’s and Deckert’s relationship changed in no substantive way from the period prior to March of 1999 when Deckert carried workers’ compensation insurance for Geiger and considered him an employee and the date of Geiger’s injury on June 25, 1999.
*250 ¶33 At the time of Geiger’s injury, the tractor and trailer that he was operating were still owned by Deckert; it was still insured by Deckert; it was still being operated pursuant to Deckert’s interstate commerce commission authority; the brokers through whom jobs were obtained still recognized Deckert as the trucking operator and all payments which came from those brokers went directly to Deckert who then controlled the disbursement of those funds by making the lease payments, depositing $500 a month in an escrow account, paying various expenses associated with the truck’s operation, and making payments for the truck which were actually owed by Deckert to a third party.
¶34 From October of 1998 through June of 1999, Geiger paid to Deckert at least $16,080.25 for the payments mentioned in the previous paragraph. These payments were of “use” to Deckert because he used them to maintain his tractor, lease his trailer, reduce the debt on his tractor and fund an escrow account for necessary repairs to the tractor and trailer in the event that they were eventually returned to him by Geiger. It could not be more obvious that Deckert was an interstate common contract motor carrier who “used” Geiger. Therefore, by the plain language of § 39-71-117(4), MCA (1997), Geiger was Deckert’s employer.
¶35 In ¶ 5, the majority attaches significance to the fact that Deckert made no profit from Geiger’s trucking operations. The reason is self evident from the first sentence in the following paragraph. The amount that Geiger was able to generate was insufficient to cover the payments for the tractor and trailer and its expenses. However, the mere fact that the operation was unprofitable should not determine the nature of the parties’ relationship. Geiger still prolonged the period of time over which Deckert was able to own the tractor and trailer which he would have to have returned to the third party earlier had Deckert not operated it for him and provided him with most of the income from his operations.
¶36 In ¶ 19, the majority states that, “the fact that Geiger made a number of monthly payments under the contract and lease does not mean that Deckert used him to serve Deckert’s trucking business.” However, I disagree. The fact that Geiger made a number of monthly payments under the contract and provided other income which allowed for the maintenance, operation and insurance of the tractor and trailer which was owned by Deckert and operated by Deckert’s trucking business, did serve his interest. As stated earlier, if Geiger had not provided the revenue to pay these expenses, Deckert would have to *251 have returned the truck to the party to whom he was making payments months earlier than he, in fact, did return it.
¶37 Finally, in ¶ 19, the majority states that if the Corut was to hold that receiving monthly installments according to a contract satisfied the definition of “used,” then “any party facilitating the payment on a contract for sale of equipment could be required to pay workers’ compensation premiums for the debtor.” That observation is a gross simplification of Geiger’s and Deckert’s financial relationship and, at the same time, a broad expansion of the application of § 39-71-117(4), MCA (1997). First, Geiger was not simply making monthly installments according to a purchase contract. All of the income that he earned from jobs arranged by brokers was sent directly to Deckert who then used that money to make the payments he owed for his truck, to make lease payments on the trailer, to pay for insurance for the truck and trailer and to pay operating and maintenance expenses. Second, to hold that Deckert’s total dependency on Geiger for revenue with which to pay for and maintain his truck would open the flood gates of workers’ compensation litigation to “any party facilitating the payment on a contract for the sale of equipment” ignores the fact that “used” is only significant for purposes of the definition of employer found at § 39-71-117(4), MCA, which pertains only to interstate motor carriers such as Deckert Trucking. One of the reasons for providing broad coverage for drivers who are used by interstate motor carriers is the history of creative methods in the trucking industry for avoiding an employer’s workers’ compensation responsibilities. Deckert’s demand that Geiger sign an agreement that he was an independent contractor before the sales contract was ever executed is just one example.
¶38 The majority Opinion exalts form over substance and falls victim to another smoke and mirror method of avoiding coverage for the state’s injured workers.
¶39 For these reasons, I dissent from the majority Opinion. I conclude, based on the undisputed facts, that Geiger was Deckert’s employee at the time of his injury and would, therefore, reverse the judgment of the Workers’ Compensation Court.
JUSTICES REGNIER and NELSON join in the foregoing dissent.